**BENNETT v. RODMAN & ENGLISH, Inc.**

**SAME v. LOUIS BOSSERT & SON, Inc.**

(two cases).

Nos. 5292, 5293, 5471.

District Court, E. D. New York.

Jan. 15, 1932.

356

David Haar, of New York City, for plaintiff.

Maurice B. Rich, of New York City, for defendants.

CAMPBELL, District Judge. ·

These are three actions in equity, brought by the trustee in bankruptcy of Froh Homes, Inc., against the several defendants to recover what he alleges to be fraudulent transfers and preferences.

The bill of complaint in the first action is against Louis Bossert & Son, Inc., to recover the sum of $1,523.50, and in the action against Rodman & English, Inc., to recover the sum of $4,566.80. Each alleges two causes of action: The first cause of action being to set aside certain payments made by the bankrupt to the defendant, on the alleged ground that the payments were made without consideration and with the intent to hinder, delay, and defraud the creditors of Froh Homes, Inc., and were fraudulent and void; the second cause of action being to set aside the transfers as preferences under the Stock Corporation Law of the state of New York, and praying for judgment against the defendants, requiring them to pay to the plaintiff herein, the trustee, the sums so alleged to have been paid in fraud of creditors or as preferences, with costs and disbursements.

The bill of complaint in the second action against Louis Bossert & Son, Inc., to recover the sum of $6,583.19, alleges but one cause of action, and that is that the transfer therein · described was made by the bankrupt to the defendant named therein at a time when the corporation (the bankrupt) was insolvent under the Stock Corporation Law of the state of New York (Consol. Laws N. Y. c. 59), or its insolvency was imminent pursuant to said law, and with the intent to prefer the defendant, and the defendant in receiving such money knew, or had reasonable cause to believe, of the existence of said intent to prefer it, and that said payments were contrary to law and void, and prays for a judgment against the defendant, requiring it to pay to the plaintiff herein, the trustee, the sum so alleged to have been paid to the defendant by the bankrupt, with costs and disbursements.

On stipulation the three cases were tried together.

One Harold F. Frohwitter, engaged in the business of developing real estate on Long Island with one-story houses and the sale thereof, formed for that purpose two corporations, one having the name Froh Homes, Inc.; the word "Froh" being the first portion of his surname, and the other having the name Witter Homes, Inc.; the word "Witter" being the last portion of his surname.

Froh Homes, Inc., was organized in the month of April, 1926, the certificate being filed with the secretary of state, April 13, 1926; and Witter Homes, Inc., was organized in the month of November, 1927, the certificate being filed with the secretary of state, December 2, 1927, both under the Stock Corporation Law of the state of New York.

Froh Homes, Inc., first bought lands in Queens Village and erected houses thereon.

Later in 1928, Froh Homes, Inc., under-

took another development in Middle Village.

In the latter part of 1927 or the early part of 1928, Witter Homes, Inc., commenced the construction of houses in Queens Village.

The defendants in the above-entitled actions furnished materials to both corporations on the several improvements.

At the times hereinafter described there was due to the several defendants money from each of the corporations, Froh Homes, Inc., and Witter Homes, Inc.; the said defendants having made their charges against the several corporations for materials furnished to each corporation.

On October 8, 1928, the bankrupt Froh Homes, Inc., made a payment to the defendant Louis Bossert & Son, Inc., of $1,523.50, not in payment of a debt due said defendant from Froh Homes, Inc., but on account of a debt due it from Witter Homes, Inc., being the amount for which recovery is sought in the first action against said defendant.

Between October 19, 1928, and February 1, 1929, both inclusive, the bankrupt Froh Homes, Inc., made payments to the defendant Louis Bossert & Son, Inc., of various sums aggregating $6,583.19 on account of the debt due the said defendant from Froh Homes, Inc., being the amount for which recovery is sought in the second action against said defendant.

Between September 7, 1928, and December 21, 1928, both inclusive, the bankrupt Froh Homes, Inc. made payments to the defendant Rodman & English, Inc., of various sums aggregating $4,566.80, not in payment of a debt due said defendant from Froh Homes, Inc., but on account of a debt due it from Witter Homes, Inc., being the amount for which recovery is sought in the action against the defendants.

Plaintiff contends that Froh Homes, Inc., was insolvent from the time it commenced the building operation in question, but this contention was not sustained.

The insolvency of that corporation, as insolvency was defined by the state law, was beyond doubt when the trust deed was made in March, 1929, and it seems to me to have been clearly established from August, 1928, on; but I believe that the president of Froh Homes, Inc., who controlled its affairs, still believed that the corporation could weather the storm from August, 1928, on until shortly before the trust deed was made, and it did continue to function until March, 1929, when,

because of its inability to meet its obligations to its creditors, it executed a deed of trust to one Paul Wicksman.

In June, 1929, a petition in bankruptcy was filed against said Froh Homes, Inc., on September 7, 1929, it was adjudicated a bankrupt, and subsequently the plaintiff herein was elected a trustee.

No assets have come into the possession of the trustee with which to pay the creditors, and some of the said creditors were creditors of the said bankrupt at the time payments were made as hereinafter mentioned.

I will first consider action No. 1 against Louis Bossert & Son, Inc., and the action against Rodman & English, Inc., and especially the first cause of action alleged against them in each of said actions.

These are not actions brought under section 67e, 11 USCA § 107 (e) but under 70e of the National Bankruptcy Act, title 11, section 110 (e) United States Code (11 USCA § 110(e), which gives to the trustee the right to bring any action which a creditor could have brought under the state law, and reads as follows: "(e) The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. * * *"

The state law upon which plaintiff relies is section 273 of the Debtor and Creditor Law, chapter 17, Laws of the state of New York 1909, constituting chapter 12 of the Consolidated Laws as amended by chapter 254 of the Laws of the state of New York of 1925, which went into effect April 1, 1925, and reads as follows: "§ 273. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

A fair consideration is defined by section 272 of the New York Debtor and Creditor Law, supra, as follows:

"§ 272. *Fair consideration.* Fair consideration is given for property, or obligation,

"a. When in exchange for such property, or obligation, as a fair equivalent therefor,

and in good faith, property is conveyed or an antecedent debt is satisfied, or

"b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

By the payments made by Froh Homes, Inc., to said defendants, of which complaint is made in said actions, no antecedent debt due from said corporation to the defendants was satisfied; but the amounts paid were on account of debts due to the defendants from Witter Homes, Inc.

 Defendants contend that there was due from Froh Homes, Inc., to Witter Homes, Inc., an amount greatly in excess of the payments made by Froh Homes, Inc., to the defendants and others on account of the debts due from Witter Homes, Inc., to them, and that the payments made by Froh Homes, Inc., to the defendants and others on account of the indebtedness of Witter Homes, Inc., was in reality a payment to Witter Homes, Inc., and in satisfaction of an antecedent debt from Froh Homes, Inc., to Witter Homes, Inc.

If it were true that at the time such payments were made there was due from Froh Homes, Inc., to Witter Homes, Inc., a sum greatly in excess of such payments, and the same were made by Froh Homes, Inc., at the request of Witter Homes, Inc., then the payments would have been made in satisfaction of an antecedent debt.

 The payments in question were received by the defendants from Froh Homes, Inc., on account of debts due from Witter Homes, Inc., and no fair consideration passed directly from the defendants to Froh Homes, Inc., and presumptively such payments were fraudulent and the defendants were put upon notice, and the burden rests upon the defendants to show that a fair consideration was given by the defendants to Froh Homes, Inc., for the payments in question. Marcus v. Kane (C. C. A.) 18 F.(2d) 722; Ga Nun v. Palmer, 216 N. Y. 603, 611, 111 N. E. 223; Klinger v. Hyman (C. C. A.) 223 F. 257, 34 A. B. R. 338; Stephenson v. Naumann (Sup.) 195 N. Y. S. 768.

This the defendants have failed to do, as I am convinced that there was not any balance due from Froh Homes, Inc., to Witter Homes, Inc., when said payments were made to the defendants. On the contrary, there was a large balance due from Witter

Homes, Inc., to Froh Homes, Inc., at that time, and the said payments were made to and received by the defendants from Froh Homes, Inc., while insolvent, without any fair consideration passing to Froh Homes, Inc.

 The defendants are not entitled to set off the balances due them from Froh Homes, Inc., at the time of the filing of the petition in bankruptcy or of adjudication against the payments in question received by them, as the term "mutual debts and credits," as used in section 68 of the Bankruptcy Act, title 11, section 108, United States Code (11 USCA § 108), does not include claims like those involved here. Lytle v. Andrews (C. C. A.) 34 F.(2d) 252, 14 A. B. R. (N. S.) 403.

To permit set-off under the conditions shown in this case would be to legalize a payment which was fraudulent, and to do by indirection what could not be done directly, and would work an injustice which cannot be permitted. Hitchcock v. Rollo, Fed. Cas. No. 6535.

 The payments in question were made without consideration passing to Froh Homes, Inc., when it was indebted at the time and was insolvent, and they were fraudulent as to creditors.

The trustee is entitled to judgment against the defendant Louis Bossert & Son, Inc., on the first cause of action in the first action against it, and against the defendant Rodman & English, Inc., on the first cause of action in the action against it, as prayed for in said complaints, with costs and disbursements.

Having found that the defendants in said action are liable on the first cause of action alleged against each of them, it is unnecessary to go into any lengthy discussion of the second cause of action; it being sufficient to say, that for the reasons hereinafter set forth as to the second action against Louis Bossert & Son, Inc., the second cause of action in the first action against Louis Bossert & Son, Inc., and the second cause of action in the action against Rodman & English, Inc., should be dismissed, without costs.

This leaves for consideration only the second action brought by the trustee against the defendant Louis Bossert & Son, Inc., to recover the sum of $6,583.19, for payments made by Froh Homes, Inc., said defendant, on account of its indebtedness to said defendant.

In this case the trustee bases his right to recover on section 15 of the Stock Corpora-

tion Law of the state of New York, chapter 61 of the Laws of the state of New York of 1909 (as amended by Laws 1923, c. 787), constituting chapter 59 of the Consolidated Laws, so much of which as is necessary reads as follows: "Prohibited transfers to officers or stockholders. * * * No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except. ' * ' Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees."

And which by chapter 653 of the Laws of 1929, in effect April 15, 1929, was amended by adding after the word "except" the words "as to any rights or interests which may be acquired thereunder by any person without notice or reasonable cause to believe that such conveyance, assignment, transfer, payment, judgment, lien or security would effect a preference, and except also."

Under the law as it read when the payments were made, it was necessary to show (1) that the corporation was a stock company; (2) that it was insolvent, or its insolvency was imminent at the time the payments were made; (3) that the payments were made with intent to prefer the creditor.

The evidence shows that the corporation was a stock corporation.

I have found and I repeat that the corporation was from August, 1928, on insolvent, as insolvency was defined by the state law; but I believe that the president of the corporation who controlled its affairs still believed the corporation could weather the storm during the times these payments were made.

The evidence is to my mind conclusive, that in making the payments to the defendant Louis Bossert & Son, Inc., of which complaint is made in the second action, neither Froh Homes, Inc., nor its officers or directors had any intent to prefer the defendant. During all the times such payments were being made, the bankrupt was continuing its business and making payments to its creditors generally, and notwithstanding the fact that the said defendant was the second largest merchandise creditor, the amounts paid to it were proportionately much less than the payments made to many smaller merchandise creditors.

The intent to prefer must be shown, and to determine that question we must try to view the situation of the bankrupt as its officers viewed it at that time. Howland v. Metropolitan Bank (D. C.) 228 F. 542; Drewen v. Union Discount Co. (C. C. A.) 32 F.(2d) 691.

Payment in ordinary course of business does not necessarily warrant inference of intention to prefer. Miceli v. Morgano (D. C.) 36 F.(2d) 507.

Counsel for both parties seem to agree that this case must be determined on the law as it stood at the time the payments were made, and that it was solely the intent of the bankrupt in making the payments that was controlling, and that it was of no moment that the payments may have been received by the defendant without notice or reasonable cause to believe such payments would effect a preference; and, having this in mind, I have so far considered only the question of the intent of the bankrupt and its officers and directors, and find that such payments were made by them without any intent to give a preference to the defendant.

It is, however, to be noted that Judge Hazel, in the United States District Court in the Northern District of New York, in Miceli v. Morgano, 36 F.(2d) 507, at page 509, said, referring to an action brought under section 15 of the Stock Corporation Law: "But, in cases like this, where the remedy is purely statutory, it has repeatedly been held that, where a statutory amendment is enacted while an action is pending, and before trial or judgment, the action is to be governed by the amendment"—and cites a number of cases which are examples.

Under this decision it would be necessary to show that the defendant had notice or reasonable cause to believe that the payments in question would effect a preference.

The defendant had no such notice or cause to believe, or it certainly would not have continued as it did receiving payments so much smaller proportionately than other creditors, and have suffered the great loss that it did.

The corporation Froh Homes, Inc., was doing business hoping and expecting to sell its houses, and continued until March, 1929, when it executed the trust deed, and, though it may have been slow, it was continuing to

make payments in the usual course of business, and had what appeared to be substantial assets.

The defendant Louis Bossert & Son, Inc., is entitled to judgment against the plaintiff on the second action, dismissing the complaint therein on the merits, with costs.

Settle decrees on notice, and submit findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court.